■ In the Matter of RAYMOND STANSBERRY et al., Respondents-Appellants, v BESSIE A. ROTHAUSER, Individually and as Program Coordinator of Section 8 Housing Program of the City of Poughkeepsie, et al., Appellants-Respondents.—In a proceeding pursuant to CPLR article 78, *inter alia,* to review the administrative determinations of officials of the City of Poughkeepsie regarding the attempted termination of petitioners' tenancy in a Section 8 Existing Housing Program financed by the United States Department of Housing and Urban Development (HUD), (1) City of Poughkeepsie employees appeal, as limited by their brief, from (a) so much of a judgment of the Supreme Court, Dutchess County (Green, J.), dated July 20, 1983, as ordered the city to continue making Section 8 subsidy payments on behalf of petitioners to their landlord pending the outcome of a hearing on the question of whether good cause existed for the termination of their tenancy and (b) so much of a further order of the same court, dated June 11, 1984, as, upon granting reargument, adhered to its original determination ordering the city to continue making Section 8 rent subsidy payments on behalf of petitioners pending the outcome of the aforementioned hearing, and (2) petitioners cross-appeal from so much of the judgment dated July 20, 1983 as, in effect, denied their request for relief under the Federally funded Section 312 Rehabilitation Loan Program.

Appeal and cross appeal from the judgment dismissed, without costs or disbursements. The judgment was superseded by the order granting reargument.

Order reversed, insofar as appealed from, on the law, without costs or disbursements, and, upon reargument, the provision in the judgment requiring the City of Poughkeepsie to continue making rent subsidy payments on behalf of petitioners is deleted and the matter is remitted to Special Term for further proceedings to determine petitioners' rights, if any, under the Section 312 Rehabilitation Loan Program.

Special Term erroneously ordered the City of Poughkeepsie to continue making Section 8 rent subsidy payments on behalf of petitioners pending determination of the question of whether their landlord had "good cause" to decline to renew their lease in accordance with the then-applicable HUD regulations *(see,* 24 CFR 882.215 [b] [1982]). At the time in issue, 24 CFR 882.107 (c) (2) pertinently provided that "housing assistance payments shall end at the end of the Contract term * * * *even if* the Family continues in occupancy of the unit" (emphasis supplied). Accordingly, the city's liability to continue such payments terminated upon the expiration of its

housing assistance contract with petitioners' landlord and petitioners' lease. In addition, Section 8 housing assistance payments on behalf of low-income tenants, such as petitioners, are financed by HUD pursuant to annual contributions contracts with participating public housing agencies, such as the Section 8 Housing Program of the City of Poughkeepsie *(see,* 42 USC § 1437f [former b]). Thus, the payments in question are not made out of city funds. Since Special Term lacked jurisdiction over HUD due to its absence as a party in the instant proceeding, it was without authority to bind the real party in interest, and directing the city to continue such payments in contradiction of HUD's regulations could conceivably be seen as requiring the city to make an unconstitutional gift of public funds to an individual in violation of NY Constitution, article VIII, § 1 *(see, Matter of Antonopoulou v Beame,* 32 NY2d 126; *Matter of City of Mount Vernon v State of New York Bd. of Equalization & Assessment,* 92 AD2d 985, 988).

Notwithstanding the foregoing, it appears that petitioners may well be eligible for assistance pursuant to the Federally funded Section 312 Rehabilitation Loan Program *(see,* 42 USC § 1452b), as the record reveals that the owner of the building containing petitioners' apartment applied for a Section 312 rehabilitation loan for that building during the term of petitioners' Federally assisted lease, and received the loan on or about October 1, 1982, shortly after the lease had expired. The regulations implementing the Section 312 program require the local administrator to issue a notice to tenants occupying an affected building either informing them of their displacement *(see,* 24 CFR 42.205 [a]) or advising them of their right to continue in occupancy *(see,* 24 CFR 42.207 [a]; 510.52 [c] [1]). The regulations further provide that "[i]f the tenant is not issued either of these notices within the prescribed time [30 days after the locality receives notification of HUD approval], he or she shall automatically be eligible for relocation assistance as described at 24 CFR 42.05 (b)" (24 CFR 510.52 [c] [1]).

It appears that petitioners have received neither a notice of displacement nor a notice of right to continue in occupancy despite the fact that the record strongly suggest that they may be entitled to some assistance under the Section 312 program, especially if their tenancy was improperly terminated. However, the propriety of that termination has yet to be adjudicated, and the record before us is otherwise insufficient to permit us to determine whether petitioners are eligible for such assistance or whether they come, for example,

within the exception set forth in 24 CFR 510.52 (c) (1) for the tenants of units whose cost of rehabilitation does not exceed $2,500 and who the locality determines will not be required to move because of the scheduled rehabilitation (see also, 24 CFR 510.52 [c] [7] [i]). We are therefore remitting the matter to Special Term for further proceedings as a prelude to making a proper determination of petitioners' rights, if any, under the Section 312 program. Gibbons, J. P., Brown, Weinstein and Niehoff, JJ., concur.